**IN THE UNITED STATES DISTRICT COURT**
**IN THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SUZANNE RUSSELL, not individually, but as GUARDIAN of DONALD R. RUSSELL, an incapacitated person,<br><br>        Plaintiff,<br><br>vs.<br><br>CHASE INVESTMENT SERVICES, CORP., a Delaware corporation<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 06-CV-538-GKF-PJC<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

**COMES NOW,** Defendant, Chase Investment Services, Corp. ("Chase"), and pursuant to Fed. R. Civ. P. 56 moves this Court to grant summary judgment in Chase's favor and against Plaintiff on Plaintiff's claims set forth in her *Petition* ("Complaint"). Chase will show this Court that Plaintiff cannot prevail on any of her claims and that Chase is entitled to judgment as a matter of law. In support of its Motion, Chase submits the following brief:

## INTRODUCTION

On April 7, 1999, Donald R. Russell ("Russell") executed a written Uniform Durable Power of Attorney (the "POA") naming his daughter Brenda Kennemer ("Kennemer") as his attorney-in-fact effective upon his disability or incapacity. After executing the POA, Russell became incapacitated and Kennemer began acting as her father's attorney-in-fact. For reasons unknown to Chase, although Russell specifically requested in his POA that Kennemer be named his guardian if guardianship proceedings were filed, Kennemer and Suzanne Russell were subsequently named as Co-Guardians of Russell in Wagoner County District Court. Thereafter,

Kennemer and Suzanne Russell went to Chase, and, according to Plaintiff, provided Chase with copies of both the POA and the *Letters of Guardianship*.

Plaintiff claims that Chase breached a fiduciary duty she alleges Chase owed to Russell, by allowing Kennemer, pursuant to the POA, to withdraw funds from an IRA Russell held at Chase. Plaintiff erroneously contends that institution of the guardianship automatically revoked the POA. Suzanne Russell, who is the only party involved in this lawsuit who actually did owe a fiduciary duty to Plaintiff, did not file an accounting of Plaintiff's assets with the Wagoner County District Court and made no written complaints to Chase regarding any of the withdrawals made by Kennemer from 2002 through June of 2005, until she instituted legal proceedings against Chase on September 11, 2006.

In addition, most, if not all, of the funds withdrawn from the IRA held at Chase were deposited into an Arkansas Valley State Bank account held in the names of Russell, Kennemer, and Suzanne Russell. As account holders, both Russell and Suzanne Russell (individually and as Guardian) received the benefit of the allegedly wrongfully deposited funds, and both Kennemer and Suzanne Russell (presumably as Guardians) spent funds from the Arkansas Valley State Bank account. It is ironic that Suzanne Russell now seeks reimbursement from Chase for funds that she spent from this account.

## **STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On April 7, 1999, Russell executed the POA appointing Kennemer as his attorney-in-fact. (See Uniform Durable Power of Attorney, Section 1.01, attached hereto as Exhibit "A").

2. The POA states that it is to become effective upon the disability or incapacity of Russell. (See Uniform Power of Attorney, Section 2.01, attached hereto as Exhibit "A").

3.      Russell's POA was executed under the provisions of Title 58, Oklahoma Statutes §§ 1071 – 1077, and was valid and binding upon him <u>until revoked or terminated</u>. (See Uniform Durable Power of Attorney, Section 2.04, attached hereto as Exhibit "A").

4.      Pursuant to the POA Kennemer was granted a broad scope of powers acting as Russell's attorney-in-fact, including but not limited to the power to deposit funds, withdraw funds, and transfer or surrender securities. (See Uniform Durable Power of Attorney, Section 3, attached hereto as Exhibit "A.")

5.      In the POA, Russell requested that no conservatorship or guardianship proceedings for his property be instituted in the event of his disability, intending that the powers granted to Kennemer would permit her to act in that capacity on his behalf. Russell further stated in the POA, that if it became necessary for a court to appoint a conservator or guardian for his person or property, that his daughter Kennemer should serve as his conservator or guardian. (See Uniform Durable Power of Attorney, Sections 5.01 and 5.02, attached hereto as Exhibit "A").

6.      On or about April 23, 2000, Russell "became disabled and incapable of handling his own affairs." (See Affidavit of Suzanne C. Russell and Brenda G. Kennemer, attached hereto as Exhibit "B")

7.      On February 8, 2001, Suzanne C. Russell and Brenda G. Kennemer, petitioned the District Court in and for Wagoner County, State of Oklahoma, for appointment as Co-Guardians over the person of the incapacitated person Donald R. Russell.

8.      Suzanne Russell alleges she was present when Chase was provided with a copy of the POA and the guardianship papers. (See Deposition of Suzanne Russell, attached hereto as

Exhibit "C", p.40, lns. 7-20). For purposes of this Motion for Summary Judgment only, Chase will take this allegation to be true.

9. The POA was never revoked by Suzanne Russell or Donald Russell. (See Deposition of Suzanne Russell, p. 38, ln. 19-25, p.39 ln. 1-13).

10. Prior to Russell's incapacity, Russell arranged for Chase to make monthly distributions of $1,000.00 from his IRA with Chase, which were deposited into the account at Arkansas Valley State Bank. (See Deposition of Suzanne Russell, p.7, ln. 3-10).

11. Suzanne Russell's 2001 tax return, Form 1040, and the 1099 form from Chase, reflect that withdrawals were made from Russell's IRA with Chase in 2001 in the amount of $12,000.00, which is the amount Russell arranged to be withdrawn. (See Deposition of Suzanne Russell, p. 11 ln.2 – 25, p.12 ln.1- 23).

12. Suzanne Russell's 2002 tax return, Form 1040, and the 1099 form from Chase, reflect that withdrawals were made from Russell's IRA with Chase in 2002 in the amount of $22,000.00. This is $10,000.00 more than the monthly withdrawals arranged by Mr. Russell. (See deposition of Suzanne Russell, p.13, ln. 5-25, p. 14, ln. 1-13).

13. Suzanne Russell's 2003 tax return reflects that withdrawals were made from Russell's IRA with Chase in 2003 in the amount of $12,000.00, which is the amount Russell arranged to be withdrawn. (See Deposition of Suzanne Russell, p. 18 ln.11 – 22).

14. Suzanne Russell's 2004 tax return, Form 1040, and the 1099 form from Chase, reflect that withdrawals were made from Russell's IRA with Chase in 2004 in the amount of $46,000.00. This is $34,000.00 more than the monthly withdrawals arranged by Mr. Russell. (See deposition of Suzanne Russell, p. 14, ln. 13-19, p. 18 ln. 6-10).

15.     Suzanne Russell's 2005 tax return, Form 1040, and the 1099 form from Chase, reflect that withdrawals were made from Russell's IRA with Chase in 2005 in the amount of $66,850.00. This is $54,850.00 more than the monthly withdrawals arranged by Mr. Russell. (See deposition of Suzanne Russell, p. 18 ln. 23-25, p. 19 ln. 1- 17).

16.     Chase sent monthly account statements to Plaintiff for Plaintiff's IRA with Chase, which reflected all of the distributions from Plaintiff's IRA. (See Deposition of Suzanne Russell p. 81 ln. 14-25, p. 82 ln. 1-3).

17.     Plaintiff never informed Chase that Kennemer's withdrawals from the IRA were allegedly unauthorized until instituting legal proceedings against Chase on September 11, 2006. (See *Plaintiff's Responses to Discovery Requests*, Interrogatory No. 9, attached hereto as Exhibit "D.")

18.     Neither of the co-guardians of Plaintiff filed an accounting of Mr. Russell's assets with the court from 2001 until July 31, 2006. (See Deposition of Suzanne Russell, p. 30, ln. 21-25, p. 31, ln. 1-15).

19.     A majority, if not all of the money, withdrawn from the Chase IRA account was deposited into the Arkansas Valley State Bank checking account. Suzanne Russell was a signatory on the Arkansas Valley State Bank account, which was held jointly in her name along with Kennemer and Russell. (See Deposition of John F. Grace, p. 14, lns. 3-8, attached hereto as Exhibit "E"; see also Deposition of Suzanne Russell p. 21 lns 1-12).

20.     Plaintiff received the Arkansas Valley State Bank checking account statements until 2004, at which time Plaintiff alleges Co-Guardian Brenda Kennemer began receiving the statements. (See Deposition of Suzanne Russell, p. 22 lns. 1-23).

## ARGUMENTS AND AUTHORITIES

### I.     Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In *Celotex*, the United States Supreme Court stated:

> [t]he plain language of Rule 56(c) **mandates** the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. (Emphasis added.) *Id.*

To survive a motion for summary judgment, plaintiff "must establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986). Also, plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Reliance on mere allegations or denials in the pleadings will not suffice; rather plaintiff must affirmatively prove specific facts, showing there is a genuine issue of material fact for trial. *Id.*; *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (establishing that the non-movant must go beyond the pleadings and designate specific facts, sufficient to prove an essential element to that party's case to survive summary judgment).

### II.    Plaintiff Cannot Establish that the POA was Revoked by the Guardianship.

Plaintiff's entire case rests upon the proposition that the POA naming Brenda Kennemer as Donald R. Russell's attorney-in-fact was "automatically" revoked by the guardianship of

Donald R. Russell. (See Deposition of Suzanne Russell, p. 39 lns. 9-25, and *Plaintiff's Responses to Discovery Requests*, Interrogatory No. 4, Interrogatory No. 6, attached hereto as Exhibit "D.") Plaintiff relies on Okla. Stat. tit. 58 §§ 1074, 1075 and 1076 for the claim that the guardianship automatically revoked the POA. The applicable statute upon which Plaintiff relies states:

> A. If, following execution of a durable power of attorney, a court of the principal's domicile appoints a conservator, guardian of the estate, or other fiduciary charged with the management of all of the principal's property or all of his property except specific exclusions, the attorney-in-fact is accountable to the fiduciary as well as to the principal. **The fiduciary has the same power to revoke or amend the power of attorney that the principal would have had if he were not disabled or incapacitated**.
>
> B. A principal may nominate, by a durable power of attorney, the conservator, guardian of his estate, or guardian of his person for consideration by the court if protective proceedings for the principal's person or estate are thereafter commenced. The court shall make its appointment in accordance with the principal's most recent nomination in a durable power of attorney except for good cause or disqualification.

Okla. Stat. tit. 58 § 1074. The remaining two statutes upon which Plaintiff relies, 58 O.S. §§ 1075 & 1076, provide agency protection when one acts in reliance on a power of attorney without knowledge of the expiration or revocation of the power of attorney.

However, pursuant to Oklahoma law and the statutes relied upon by Plaintiff, it is clear the POA was not automatically revoked merely by the appointment of a guardian. In fact, the statute cited above specifically states that the attorney-in-fact is accountable to the principal as well as the guardian, and that the guardian has the same power to revoke the durable power of attorney as the principal would if he was not incapacitated. Therefore, Kennemer was accountable to Russell as well as herself and Suzanne Russell as Russell's attorney-in-fact, and Suzanne Russell and Kennemer had the same powers to revoke the POA as Russell would if he were not incapacitated. It is undisputed that the POA was never revoked by Russell or his Co-

Guardians (See undisputed fact number 9). Not only was the POA not revoked, according to the Plaintiff, the POA was given to Chase at the same time that Kennemer and Suzanne Russell went to Chase and provided it with the *Letters of Guardianship*.

Because the POA was never revoked, Kennemer had the authority to withdraw funds from Plaintiff's IRA held at Chase, and Chase was entitled to rely on the POA with regards to the transactions about which Plaintiff complains. Therefore, as a matter of law, all of Plaintiff's claims must fail due to the fact that Kennemer acted upon, and Chase relied upon, powers which Kennemer did possess as Russell's attorney-in-fact.

### III.   Chase Did Not Owe a Fiduciary Duty to Plaintiff.

Even if the Court should find that the POA was revoked by institution of the guardianship, Chase did not owe a fiduciary duty to Plaintiff; therefore, Plaintiff's claims must still fail. In *First National Bank and Trust Co. of Vinita v. Kissee*, the Oklahoma Supreme Court stated that "Oklahoma follows the common law rule that the relationship between a bank and its customer is not fiduciary in nature, but is that of creditor-debtor." *First National Bank and Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 510 (Okla. 1993). Pursuant to Oklahoma Statutes,

> Unless a state or national bank shall have expressly agreed in writing to assume special or fiduciary duties or obligations, no such duties or obligations will be imposed on the bank with respect to a depositor of the bank or a borrower, guarantor or surety, and no special or fiduciary relationship shall be deemed to exist.

Okla. Stat. tit. 6 § 425. Although Chase did not breach any duty it may have owed to Plaintiff by allowing Plaintiff's attorney-in-fact and guardian to withdraw funds from Plaintiffs account, as a matter of law <u>Chase did not owe Plaintiff a fiduciary duty</u>.

**IV.     Plaintiff is Precluded From Asserting Claims of Transfers Made More Than One (1) Year Before Filing This Action.**

Even if Chase did owe a duty to Plaintiff, Plaintiff's failure to report alleged unauthorized signatures precludes all of Plaintiff's claims, because Chase delivered monthly account statements and yearly tax information to Plaintiff reflecting <u>all</u> of the withdrawals from Plaintiff's IRA. Because Chase was entitled to rely upon Kennemer's authority pursuant to the POA and the guardianship, and sent Plaintiff monthly account statements reflecting the distributions about which Plaintiff complains, Plaintiff is therefore precluded from bringing any claim for distributions made greater than either thirty (30) days and/or one (1) year from the date the statement was provided.

Oklahoma law 12A O.S. § 4-406 provides the following with regard to claims against banks for unauthorized withdrawals:

> (a) A bank that sends or makes available to a customer a statement of account showing payments of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. . . .
> \*\*
> (c) If a bank sends or makes available a statement of account or items pursuant to subsection (a) of this section, the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.
>
> (d)  If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on a customer by subsection (c) of his section, the customer is precluded from asserting against the bank:
>
> > (1)  The customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and
> >
> > (2)   The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment

> was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty (30) days, in which to examine the item or statement of account and notify the bank.
>
> \*\*
>
> (f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within one (1) year after the statement or items are made available to the customer (subsection (a) of this section) discover and report the customer's unauthorized signature on or any alteration on the items is precluded from asserting against the bank the unauthorized signature or alteration. . . .

Okla. Stat. tit. 12A § 4-406.

On July 11, 2005, Plaintiff filed an application with the court in Wagoner County, Oklahoma, requesting an order compelling Kennemer to file an accounting for Plaintiff. Shortly after Plaintiff filed her application for an accounting, and prior to July 15, 2005, Kennemer committed suicide. On July 15, 2005, Plaintiff made a request to the court to employ a fraud expert and therein informed the court of Kennemer's death. The last contested distribution made by Chase from the account in question while Kennemer was living was made on June 10, 2005. (See Retirement Account Statement, attached hereto as Exhibit "F.") Chase was never notified of Plaintiff's contention that Kennemer was not authorized to make withdrawals from Russell's IRA until this lawsuit was originally filed in the Wagoner County District Court on September 11, 2006.

In *Cooper v. Stock Yards Bank of Oklahoma City*, 644 P.2d 123 (OK CIV APP 1981), the Court of Appeals reversed the trial court's judgment in favor of the bank customer where the customer failed to report alleged unauthorized signatures on the account within the fourteen (14) day time period provided by the plain wording of 12A O.S. 1971 § 4-406. The court concluded that the statute of limitations had expired on all checks written after the time period provided by the statute, because, "under the standards set by the uniform Commercial Code, Customer's

failure to protest the checks bearing unauthorized signatures at that time precludes him from now asserting them against Bank." *Cooper v. Stock Yards Bank of Oklahoma City* at 126.

Title12A, § 4-406 has since been amended to provide that a customer has a reasonable time, not exceeding thirty (30) days, to notify a bank of unauthorized signatures by the same wrongdoer, which Plaintiff failed to meet. In addition, the statute also states, <u>without regard to care or lack of care of the bank</u>, that a customer has one (1) year to make a claim against a bank alleging an unauthorized signature or alteration. Because Plaintiff did not notify Chase that the withdrawals made by Kennemer were allegedly unauthorized until September 11, 2006, Plaintiff's claims are precluded as a matter of law without regard to care or lack of care on the part of Chase, due to the fact that they were not filed within one year of the June 2005 statement being made available to Plaintiff by Chase.

## **CONCLUSION**

Oklahoma law is clear that institution of a guardianship does not automatically revoke a durable power of attorney. As long as the POA naming Kennemer as Russell's attorney-in-fact was not revoked or terminated, Kennemer was entitled to exercise the broad powers provided in the POA, which include the transactions complained of by Plaintiff. Because Kennemer was Russell's attorney-in-fact and authorized to request the distribution from Plaintiff's IRA, Chase did not, and could not have, breached any duty it owed to Plaintiff.

In addition to Kennemer having authority to withdraw the money from the IRA pursuant to the POA, Chase did not owe Plaintiff a fiduciary duty as a matter of Oklahoma law. Chase fulfilled all of its duties by providing account statements and proper tax forms evidencing the distributions. In any event, because Chase provided Plaintiff with account statements reflecting all of the distributions about which Plaintiff complains, and Plaintiff did not notify Chase of his

contention that the withdrawals were unauthorized within one (1) year of any statement reflecting the withdrawals being made available, all of Plaintiff's claims are barred.

**WHEREFORE, PREMISES CONSIDERED,** Chase respectfully requests this Court grant Summary Judgment in its favor as to Plaintiff's claims in this action, and grant Chase such other and further relief, both general and special, at law or in equity, to which Chase may be entitled, including but not limited to its cost and attorney fees, and all other relief this Court deems just and equitable.

Respectfully submitted,

**JONES, GOTCHER & BOGAN**

By: s/Tadd J.P. Bogan
James E. Weger, OBA 9437
Tadd J.P. Bogan, OBA 20962
15 East 5th Street, Suite 3800
Tulsa, OK 74103
(918) 581-8200
Facsimile (918) 583-1189
jweger@jonesgotcher.com
tbogan@jonesgotcher.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on May 30, 2007, I electronically transmitted the foregoing document to the clerk of the Court using the ECF System for filing and transmitted a true and correct copy in the United States Mail with proper postage fully prepaid thereon to:

Lawrence A. G. Johnson, Esq.
tendalla@aol.com

s/Tadd J.P. Bogan
James E. Weger
Tadd J.P. Bogan